UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WOODCLIFF, INC.  :<br>  :<br>  :<br>  :<br>     Plaintiff,   :<br>  :<br>   v.  :<br>  :<br> JERSEY CONSTRUCTION, INC., et al.  :<br>  :<br>  :<br>  :<br>     Defendants.  : | Civil Action 11-4911(JAP)<br><br>**OPINION** |

PISANO, District Judge.

Plaintiff, Woodcliff Inc. ("Woodcliff") brings this action against Jersey Construction

Inc. ("JCI") and the New Jersey Department of Transportation ("NJDOT") alleging that, in

connection with a road construction project, contaminated soil from NJDOT's property was

transported by JCI to Woodcliff's property.  Two counts in the complaint remain against

NJDOT:[1]  Count Three alleges liability under the New Jersey Spill Compensation and Control

Act ("Spill Act"), and Count Four alleging common law trespass.  Presently before the Court

is NJDOT's motion for summary judgment.  The Court heard oral argument on August 6,

2012.  For the reasons below, NJDOT's motion is granted in part and denied in part.

---

[1] Plaintiff has voluntarily dismisses Counts One and Two as to NJDOT.  *See* Pl. Brf. at 2, n.1.

## I.  BACKGROUND

Plaintiff Woodcliff is the owner and developer of a residential community known as

Woodcliff Estates at Hamilton located in Hamilton, New Jersey.  In or about 2009, road

construction work was being performed by JCI in connection with the construction of a new

shopping center by Stanbery Hamilton LLC ("Stanberry") at Route 130 and Hamilton Square

Road in Hamilton (the "Intersection").  Affidavit of Richard Dube ("Dube Aff.") ¶ 6.

Plaintiff alleges that during the road work, defendant JCI removed 8,000 cubic yards of soil

and offered it to Woodcliff for use in Woodcliff's ongoing development activities.  Compl. ¶

12.  Woodcliff accepted the offer, and the soil was deposited in two piles at Woodcliff

Estates.  *Id.* ¶ 13.  Approximately one year later, Plaintiff discovered the soil was

contaminated with arsenic.  *Id.* ¶ 14.  According to the complaint,

Although the complaint alleges that JCI was performing road work for NJDOT at the

relevant times, the record thus far[2] shows that JCI was, rather, performing the work pursuant

to a contract with Stanbery.  NJDOT and Stanbery were parties to a "Developer Agreement"

that required Stanbery to make certain improvements to the roadways because, as set forth in

the agreement, Stanbery's development would "aggravate conditions on the State highway

system" as a result of the increase in traffic created by the new shopping center.  Szabo Cert.

Ex. B at 1.   As such, Stanbery contracted with JCI to perform the necessary road construction

work.  Dube Aff. ¶ 6.

## II.  ANALYSIS

NJDOT moves for summary judgment alleging, as to Count Three of the complaint,

that it is not liable under the Spill Act because certain exceptions applicable to governmental

---

[2] As of the date of the filing of the motion there has been little or no discovery taken.

entities under the Act apply.  As to Count Four, NJDOT alleges that Plaintiff's trespass claim

is barred.

A.  Summary Judgment Standard

A court shall grant summary judgment under Rule 56 of the Federal Rules of Civil

Procedure "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The substantive law

identifies which facts are critical or "material."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  A material fact raises a "genuine" issue "if the evidence is such that a

reasonable jury could return a verdict" for the non-moving party.  *Healy v. N.Y. Life Ins. Co.*,

860 F.2d 1209, 1219 n.3 (3d Cir. 1988).

On a summary judgment motion, the moving party must show, first, that no genuine

issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the

moving party makes this showing, the burden shifts to the non-moving party to present

evidence that a genuine fact issue compels a trial.  *Id.* at 324.  The non-moving party must

then offer admissible evidence that establishes a genuine issue of material fact, *id.*, not just

"some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith

Radio Corp.*, 475 U.S. 574, 586 (1986).

The Court must consider all facts and their logical inferences in the light most

favorable to the non-moving party.  *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d

860, 864 (3d Cir. 1986).  The Court shall not "weigh the evidence and determine the truth of

the matter," but need determine only whether a genuine issue necessitates a trial.  *Anderson*,

477 U.S. at 249.  If the non-moving party fails to demonstrate proof beyond a "mere scintilla"

of evidence that a genuine issue of material fact exists, then the Court must grant summary

judgment.  *Big Apple BMW v. BMW of North America*, 974 F.2d 1358, 1363 (3d Cir. 1992).

B.  Count Three – Spill Act Claim

Under New Jersey's Spill Act, "any person who has discharged a hazardous substance,

or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and

severally, without regard to fault, for all cleanup and removal costs no matter by whom

incurred." N.J.S.A. 58:10–23.11g(c)(1).  It further provides that

> [w]henever one or more dischargers or persons cleans up and removes a
> discharge of a hazardous substance, those dischargers and persons shall have a
> right of contribution against all other dischargers and persons in any way
> responsible for a discharged hazardous substance or other persons who are
> liable for the cost of the cleanup and removal of that discharge of a hazardous
> substance.

N.J.S.A. 58:10-23.11f.  However, the Act provides exceptions from liability for governmental

entities in certain situations:

> Any federal, State, or local governmental entity which acquires ownership of
> real property through bankruptcy, tax delinquency, abandonment, escheat,
> eminent domain, condemnation or any circumstance in which the
> governmental entity involuntarily acquires title by virtue of its function as
> sovereign, or where the governmental entity acquires the property by any
> means for the purpose of promoting the redevelopment of that property, shall
> not be liable, pursuant to subsection c. of this section or pursuant to common
> law, to the State or to any other person for any discharge which occurred or
> began prior to that ownership. This paragraph shall not provide any liability
> protection to any federal, State or local governmental entity which has caused
> or contributed to the discharge of a hazardous substance. This paragraph shall
> not provide any liability protection to any federal, State, or local government
> entity that acquires ownership of real property by condemnation or eminent
> domain where the real property is being remediated in a timely manner at the
> time of the condemnation or eminent domain action

N.J.S.A. 58:23-11g(e)(4).  NJDOT asserts that it is entitled to summary judgment as to Count

Three because certain exceptions from this provision apply here.  First, NJDOT points to the

"redevelopment" exception: "Any … State …governmental entity … where the governmental entity acquires the property by any means for the purpose of promoting the redevelopment of that property, shall not be liable, … for any discharge which occurred or began prior to that ownership." N.J.S.A. 58:23-11g(e)(4). Second, NJDOT states that it acquired title to the land "involuntarily," by way of a developer agreement, and thus is excepted from liability.

The Court finds that NJDOT has not shown that it is entitled to summary judgment with respect to Plaintiff's Spill Act claim because there are a number of unresolved issues of material fact. For example, it is unclear from the record where the contaminated soil originated. It appears that NJDOT concedes (for the purposes of the motion, anyway) that the contaminated soil came from property owned by NJDOT, but there are questions of fact surrounding the acquisition of such property, such as to how and for what purpose the property was acquired by NJDOT. As relevant to the redevelopment exception in the Spill Act, NJDOT has not presented evidence showing that it "acquire[d]" the property in question was "for the purpose of promoting redevelopment of the property." Nor has NJDOT presented evidence showing that it "acquire[d]" the property "involuntarily." In fact, the virtually the only information provided by NJDOT about its ownership and acquisition of the property is that "all property used for highway improvements was within existing [NJDOT] right-of-way" and that jughandle construction at Route 130 and Klockner Road "was completed on property that had been dedicated to NJDOT by a different developer." Dube Aff. ¶ 6. Furthermore, NJDOT's argument with regard to its acquisition of the property at Route 130 and Klockner Road seems to be at odds with the affidavit it submitted in support of its motion. NJDOT appears to be stating in its reply brief that the property was acquired from

Stanbery by way of the Development Agreement (Reply at 2-3), while the affidavit states that the same property was dedicated to NJDOT by a different developer.  Dube Aff. ¶ 6.

The record in this matter is limited to little more than a short, six-paragraph affidavit from an NJDOT employee and a copy of the Developer Agreement between NJDOT and Stanberry.  Discovery has not taken place yet.  NJDOT simply has not shown, on the limited record, that it is entitled to judgment as a matter of law at this time as to Count Three.

C.  Count Four – Trespass Claim

Trespass is a cause of action for one's "unauthorized entry (usually of tangible matter) onto the property of another."  *New Jersey Turnpike. Auth. v. PPG Indus. Inc.*, 16 F.Supp.2d 460, 478 (D.N.J. 1998).  Plaintiff brings a claim of trespass based upon allegations that JCI offered to Woodcliff and delivered to Woodcliff's property soil that later was discovered to be contaminated with arsenic, a toxic substance.  In essence, Plaintiff's claim is that, although it consented to the delivery of soil to its property, Plaintiff did not consent to the arsenic being discharged on its property.  Courts, however, have found that use of trespass liability for similar scenarios has "been held to be an inappropriate theory of liability" and an "endeavor to torture old remedies to fit factual patterns not contemplated when those remedies were fashioned." *Id.*; *see also Preferred Real Estate Investments, Inc. v. Edgewood Properties, Inc.*, 2007 WL 81881,  (D.N.J. Jan 09, 2007) (dismissing trespass claim by property owner against supplier of contaminated concrete and stating that "[e]ven if New Jersey courts permitted recovery under trespass for contamination cases, Plaintiffs' allegations taken as true 'would fail as a matter of law [as Plaintiffs' alleged] subsequent discovery of the "true nature" of the fill substance ... does not transform its acceptance of fill into a trespass.'") (quoting *New*

*Jersey Turnpike. Auth.*, 16 F.Supp.2d at 478).  Consequently, the Court grants NJDOT's

motion as to Count Four.

### III.  CONCLUSION

For the reasons above, NJDOT's motion for summary judgment is granted in part and

denied in part.  The motion is denied as to Count Three of the complaint, and granted as to

Count Four.  An appropriate Order accompanies this Opinion.


/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated:  August 31, 2012